UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LAWRENCE HEMMING | ) | Case No. 06-33376 |
|        Debtor | ) | |
| | ) | |
| RICHARD F. CLIPPARD | ) | |
| UNITED STATES TRUSTEE | ) | |
|        Plaintiff | ) | |
| vs. | ) | AP No. 07-3141 |
| | ) | |
| LAWRENCE HEMMING | ) | |
|        Defendant | ) | |

## MEMORANDUM

      This matter came before the Court for trial on August 28, 2007, on the Complaint Objecting to Discharge filed by the Plaintiff, Richard F. Clippard, United States Trustee ("UST"). The debtor, Lawrence Hemming ("Hemming"), Hemming's counsel, and Plaintiff's counsel all appeared before the Court. Following trial, the Court gave the parties until September 14, 2007, to file post trial briefs. The Court also gave Lenore Hemming, the debtor's non-filing spouse, until September 14, 2007, to file a post trial *amicus* brief. Only Lenore Hemming and the UST filed post trial briefs. Upon consideration of the argument of counsel, the briefs filed, and the testimony and exhibits presented at trial, the Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

## FINDINGS OF FACT

1.      Prior to filing for Chapter 7 bankruptcy relief, Hemming obtained a law degree and worked as a staff attorney in Jefferson Circuit Court from 2001 through 2003. Due to a criminal conviction, Hemming no longer works in the legal profession.

2.      On or about July 17, 2006, Hemming and his future spouse, Lenore Marie Slawsky, entered into a Prenuptial Agreement.  Paragraph 3(a) of that document provides that both Hemming and his spouse waive the right to share in each other's property brought to the marriage as separate property upon their death or dissolution of the marriage.  Neither the UST nor Hemming provided to the Court the exact date Hemming married his spouse.

3.      On December 5, 2006, Hemming filed a voluntary petition for bankruptcy relief under Chapter 7 of Title 11 of the United States Code.  On his Schedule I, Hemming disclosed his income, but failed to include the income of his non-filing spouse as required by the Official Forms.  In the Means Test (Form 22A), however, Hemming did disclose that his non-filing spouse earned $10,833 in monthly income.

4.      On February 2, 2007, the UST moved to examine Hemming pursuant to Fed. R. Bankr. P. 2004.  The UST further moved to compel Hemming to produce for inspection and copying the following documents: 1) payment advices for the debtor's non-filing spouse for the months of June, July, August, September, October, and November of 2006; and 2) statements and check images on all bank accounts for the year 2006, whether in the debtor's name alone, jointly with the non-filing spouse or the non-filing spouse's name alone.  The UST requested these documents to examine Hemming's schedules and to make an informed determination as to whether this case constituted an abusive filing under 11 U.S.C. § 707(b).

5.      On February 5, 2007, this Court entered an order granting the UST's motion.  That order directed Hemming to appear for examination on February 22, 2007, and directed Hemming to produce the above described documents at least ten days before the examination date.

2

6.     Although he could not testify as to the exact date, Hemming testified that he became aware of the February 5, 2007 order at some point between February 5 and the date of the examination.  He also understood that the order required him to produce the above-described documents to the UST.

7.     Hemming never instructed his attorney to object to the order, to seek reconsideration of that order, to appeal that order, or otherwise challenge this Court's February 5, 2007 order.

8.     Hemming appeared for his 2004 examination, but did not produce the documents as ordered. Hemming blamed his spouse for his failure to produce the documents.  Specifically, he testified that he asked his spouse for the documents and that she refused his request.  He also testified that under the terms of the Prenuptial Agreement, he had no access to his spouse's financial records.

9.     Other than asking his spouse for the documents, Hemming did not indicate that he made any other efforts to comply with the order for production.

10.    On March 5, 2007, the UST commenced this action seeking to deny Hemming his discharge under the provisions of 11 U.S.C. § 727(a)(6)(A).  The UST alleged Hemming refused to obey a lawful order and, consequently, that his discharge should be denied.

11.    At some point subsequent to the 2004 examination, some documents were produced to the UST, but, as of the date of trial, neither the check images nor the non-filing spouse's payment advices have been produced.  Hemming testified that after the 2004 examination he again requested the documents from his spouse and that his spouse agreed to this limited production, but she still refused him access to the other documents set forth in the order.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(J), and venue is proper under 28 U.S.C. § 1409(a). The parties have submitted to the jurisdiction of this Court.

## LEGAL DISCUSSION

Generally speaking, discharges in bankruptcy are favored. Marquis v. Marquis (In re Marquis), 203 B.R. 844, 847 (Bankr. D. Me. 1997). Consequently, any party seeking to revoke a debtor's discharge bears the burden of proof to demonstrate, by a preponderance of the evidence, that the debtor has violated one of the subsections of § 727. Grogan v. Garner, 498 U.S. 279, 287, 111 S.Ct. 654, 659-60, 112 L.Ed.2d 755 (1991); Fed. R. Bankr. P. 4005. Section 727(a)(6)(A) provides that a court shall grant the debtor a discharge unless the debtor has refused, in the case "to obey any lawful order of the court, other than an order to respond to a material question or to testify."

Many courts have used the same test for civil contempt to determine if a debtor has refused to obey an order for § 727(a)(6)(A) purposes. In re Meyers, 293 B.R. 417, 419 (Bankr. N.D. Ohio 2002) (a debtor will be found to have "refused" to obey a court order under § 727(a)(6)(A) when the debtor's inaction would give rise to a charge of civil contempt); Hazlett v. Gorshe (In re Gorshe), 269 B.R. 744, 747 (Bankr. S.D. Ohio 2001) (refusal to obey the order must be akin to civil contempt); United States v. Richardson (In re Richardson), 85 B.R. 1008, 1011 (Bankr. W.D. Mo. 1988) (an objection to discharge for refusal to obey a lawful order of court is, in substance, a contempt proceeding). In a civil contempt proceeding, three elements must be established: "(1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) the alleged

4

contemnor did in fact violate the order; and (3) the order violated must have been specific and definite." In re Magack, 247 B.R. 406, 410 (Bankr. N.D. Ohio 1999) *citing* Glover v. Johnson, 138 F.3d 229, 244 (6th Cir. 1998).  In this case, there is no real dispute that the UST met his burden of proof with respect to these three elements.  Hemming had knowledge of the February 5, 2007 order, he failed to comply by producing the documents, and the order requiring him to produce the documents was specific and definite.  Instead, Hemming asserts he did not refuse to obey the court order, but rather that he failed to comply and that his failure was justified because he did not have possession of the documents and that his spouse refused him access to the required documents.

Impossibility or an inability to comply with a judicial order is a valid defense to a charge of civil contempt.  United States v. Bryan, 339 U.S. 323, 330-334, 70 S.Ct. 724, 730-732, 94 L.Ed. 884 (1950) ("Ordinarily, one charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to comply.").  Such a defense requires that the person charged with contempt to have exercised due diligence and, through no fault of their own, is still unable to comply with the order.  The contemnor may not merely assert an inability to comply, but must also introduce supportive evidence showing that all reasonable efforts to comply have been undertaken. Harrison v. Metro. Gov't of Nashville & Davidson County, Tenn., 80 F.3d 1107, 1112 (6th Cir. 1996), *overruled on other grounds by* Jackson v. Quanex Corp., 191 F.3d 647, 667 (6th Cir. 1999).  Hemming asserts that because his wife was in possession of the documents in question it was impossible for him to comply with this Court's February 5, 2007 order.  The Court disagrees.

Kentucky Revised Statute § 401.190(3) states that all property acquired by either spouse after

5

the marriage and before a legal dissolution is presumed to be marital property.  Neidlinger v.

Neidlinger, 52 S.W.3d 513, 522 (Ky. 2001).  Thus, it appears Hemming possessed an equal right to

his spouse's post-marriage financial information.  Furthermore, the Prenuptial Agreement between

Hemming and his spouse did not restrict access to financial records.  The Prenuptial Agreement went

to great lengths to exclude separate property brought into the marriage from being included in the

marital community property pool.  Because the financial information at issue here does not fall into

the separate property category covered by the Prenuptial Agreement, the Prenuptial Agreement did

not prevent Hemming from gaining access to his spouse's financial information.

Not only did Hemming have a right to his spouse's financial information, the evidence

demonstrated that he was in possession of that information at some point in time prior to the filing

of his bankruptcy petition.  While he did not include his non-filing spouse's income on his Schedule

I as required by the Official Forms, he did include financial information about his non-filing spouse

in his Means Test (Form 22A).  Presuming he honestly and accurately filled out this form, it stands

to reason that Hemming had access to his spouse's financial information.

As stated above, one under a court order to perform an action must establish that he acted

reasonably diligent in attempting to comply with the court's order by taking all reasonable steps

within his power to ensure compliance. Applying this standard to this case, the Court cannot find

that Hemming has met this burden.  Other than simply asking his spouse for the documents and

accepting her refusal, Hemming presented no evidence that he took any other steps to comply with

this Court's order for production. This Court does not believe that simply asking his wife for the

documents is sufficient to meet the burden of taking all reasonable steps within his power to ensure

compliance. Hemming could have taken any number of steps to comply with the Court's order. For example, Hemming could have moved for an order to compel his spouse to provide the required documentation or he could have subpoenaed the documents from his spouse. Even if these options were not appealing, Hemming could have moved the Court to reconsider the order to produce, made a motion for protective order, or made some other appropriate motion. Instead, Hemming chose simply to accept his spouse's refusal and disregard the portion of the order directing him to provide documents.

The Court will also point out from a practical standpoint the policy ramifications should Hemming be successful with this defense. Even before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") amendments, the UST was charged to insure debtors did not abuse the provisions of Chapter 7. To facilitate this task, in 11 U.S.C. § 521(a)(3), Congress imposed upon a debtor a "duty to cooperate" with a trustee as necessary to enable the trustee to perform the trustee's duties. The UST must review the financial information of the debtor, and also any non-filing spouse, in order to determine a debtor's ability to fund a Chapter 13 plan and debtor's routinely provide the information without any problem. Should, however, Hemming be successful with his "my wife won't give me the information" defense, every debtor with a non-filing spouse could thwart the UST's efforts with the same defense. The UST would be forced to either conduct a 2004 examination of the non-filing spouse separately or subpoena the non-filing spouse's information directly, thereby unduly delaying the administration of routine bankruptcy cases.

Lenore Hemming, the debtor's spouse, raises several arguments in her *amicus* brief which the Court will address. First, she questions the propriety of the UST's motion seeking examination

of the debtor and a production of documents.  She alleges that the motion violated Local Rule 8.2(e) by requesting two  forms of relief, examination and production, and that the motion failed to include an objection period, also in violation of Local Rule 8.2.  These misplaced procedural arguments belie the purpose for allowing her to file an *amicus* brief as they do nothing to address the merits of the issue before the Court, whether Hemming refused to obey a lawful court order.  Next, she makes the preposterous argument that her financial information has no relevance, completely disregarding the fact that both Schedule I and the Means Test (Form 22A) requires non-filing spouse information.  It is clear to this Court that this information is not only relevant, but also critical in order to properly evaluate  whether  a  particular  Chapter  7  case  is  abusive  under  11  U.S.C.  §  707(b).    More significantly, this argument also fails to address the issue of whether the debtor refused to obey a court order.  Certainly these objections should have been raised <u>by the debtor</u> after the motion was filed, or raised in a motion to reconsider, but they were not.  Indeed, the evidence clearly shows that Hemming did little or nothing in response to the motion and order.  As stated above, one ordered to do something by a court must take all reasonable steps within his power to ensure compliance.  Simply stated, Hemming failed to meet this burden.

In conclusion, the Court finds that Hemming refused to comply with this Court's February 5, 2007 order.  Furthermore, Hemming failed to show that his failure to obey the Court's order of production was defensible on the basis of impossibility or an inability to comply.  Accordingly, the Court finds that Hemming's bankruptcy discharge should be denied in accordance with 11 U.S.C. § 727(a)(6)(A).  The Court shall enter a Judgment this same date in accordance with the holding of this Memorandum.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:                                    )
LAWRENCE HEMMING                          )    Case No. 06-33376
      Debtor                              )
                                          )
RICHARD F. CLIPPARD                       )
UNITED STATES TRUSTEE                     )
      Plaintiff                           )
vs.                                       )    AP No. 07-3141
                                          )
LAWRENCE HEMMING                          )
      Defendant                           )

## JUDGMENT

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Judgment is rendered in favor of the Plaintiff and against the Defendant.

**IT IS FURTHER ORDERED** that the Defendant be, and hereby is, denied a discharge pursuant to 11 U.S.C. § 727(a)(6)(A).